UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 15-cv-23755-GAYLES

BRENMAR HOLDINGS, LLC; BRENDA
HILL RIGGINS; MARCUS RIGGINS; and
MAR'S CONTRACTORS, INC.,
           Plaintiffs,

v.

REGIONS BANK, N.A.,
           Defendant.
_____/

**ORDER**

**THIS CAUSE** comes before the Court on Defendant Regions Bank, N.A.'s ("Regions") Motion to Dismiss [ECF No. 45]. The Plaintiffs in this action bring claims for negligence and breach of fiduciary duty against Regions, arising from a small business loan transaction allegedly gone wrong. The Court has carefully considered the operative complaint, the parties' briefs, and the applicable law. Because the Court finds that neither a tort duty nor a fiduciary relationship exists under the circumstances of this case, the motion to dismiss shall be granted.

**I.    BACKGROUND**

According to the allegations in the Second Amended Complaint, in 2009, Plaintiffs Brenda Hill Riggins and Marcus Riggins (the "Riggins") sought a loan to purchase and construct an office in Kendall, Florida, for their business Mar's Contractors, Inc. ("Mar's"), also a Plaintiff here. Second Am. Compl. ¶ 8. Mar's applied for a business loan under the Small Business Administration 504 Program ("SBA 504 Program"), a program that seeks to stimulate the growth of small businesses. *Id.* ¶ 9. Three entities participate in an SBA 504 Program loan: the small business that applies for the loan, the institutional lender, and a Community Development Company ("CDC"), which works with the participating lender to provide financing to small businesses. *Id.* ¶ 11. Mar's

applied for an SBA 504 loan with Regions in December 2009. *Id.* ¶ 12. Regions advised Mar's and the Riggins that a limited liability should be formed as the borrower. *Id.* Acting on this advice, Mar's and the Riggins formed Brenmar Holdings, LLC ("Brenmar"), also a Plaintiff here, on December 21, 2009. *Id.*

On or about December 15, 2009, the SBA approved a twenty-year debenture in the amount of $88,000 that was to be issued to the CDC and to be used to fund the Plaintiffs' 504 loan. *Id.* ¶ 13. The proceeds were to be partly used to purchase the property and to pay the administrative costs and the final forty percent of the total construction project cost. *Id.* The SBA approval required that the debenture proceeds be disbursed no later than forty-eight months from December 15, 2009, otherwise the authorization would be cancelled by the SBA. *Id.* At all material times, Regions was the interim lender. *Id.* ¶ 14.

On March 31, 2010, the parties closed on the interim loan. *Id.* On that date, Brenmar executed and delivered two promissory notes in favor of Regions to evidence the loans from Regions. *Id.* ¶ 15. The first loan was a fixed-interest-rate, ten-year mortgage loan in the amount of $120,000. *Id.* The second loan was the interest-only interim loan in the amount of $96,000, with a maturity date of May 2011. *Id.* The maturity date was later extended to August 15, and then October 15, 2011, to allow Regions to convert the loan into the 504 loan. *Id.* Also on March 31, 2010, Mar's and the Riggins signed commercial guarantees, guaranteeing the payment of the promissory notes and mortgages. *Id.* ¶ 16. The Plaintiffs allege that they executed the loan documents with the understanding and belief that the interim loan would be converted, closed, and/or processed to the SBA loan program. *Id.* ¶ 17. They also allege that Regions sold Brenmar the loans with the understanding that the interim loan would be converted, closed, and/or processed to the SBA loan program. *Id.*

The CDC processed the application and the SBA approved the applications and issued

2

authorization approving the loan funding. *Id.* ¶ 18. Regions, however, failed to process, convert, and/or close the interim loan for the SBA takeover, despite several extensions to the maturity date of the interim loan and despite the fact that Brenmar provided the required documentation and completed the purchase of the property and the construction of the project. *Id.* Regions gave no reason as to why it failed to process the loan. *Id.*

The Plaintiffs attempted to contact Regions in regards to converting the second mortgage, but Regions did not respond to the Plaintiffs. *Id.* ¶ 19. The parties also allegedly scheduled meetings at which Regions then failed to attend. *Id.* Regions' alleged failure to process, close, and/or convert the interim loan allowed the maturity date to expire and the interim loan to become due without the conversion being completed. *Id.* ¶ 20. The Plaintiffs then defaulted on the loan, and Regions sold and assigned the loan and mortgage to a third party who foreclosed on the property. *Id.* ¶ 21.

The Plaintiffs filed this action on October 7, 2015. In the Second Amended Complaint, they bring two claims against Regions: negligence and a breach of fiduciary duty. Regions has moved to dismiss both claims, and the Plaintiffs oppose the motion.

## II.     LEGAL STANDARD

To survive a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6), a claim "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" meaning that it must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the conduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While a court must accept well-pleaded factual allegations as true, "conclusory allegations . . . are not entitled to an assumption of truth—legal conclusions must be supported by factual allegations." *Randall v. Scott*, 610 F.3d 701, 709-10 (11th Cir. 2010). "[T]he pleadings are con-

strued broadly," *Levine v. World Fin. Network Nat'l Bank*, 437 F.3d 1118, 1120 (11th Cir. 2006), and the allegations in the complaint are viewed in the light most favorable to the plaintiff, *Bishop v. Ross Earle & Bonan, P.A.*, 817 F.3d 1268, 1270 (11th Cir. 2016). At bottom, the question is not whether the claimant "will ultimately prevail . . . but whether his complaint [is] sufficient to cross the federal court's threshold." *Skinner v. Switzer*, 562 U.S. 521, 530 (2011).

## III.   DISCUSSION

### A.   *Negligence*

In their negligence claim, the Plaintiffs allege that Regions, as an SBA 504 interim lender, breached a duty of reasonable care owed to the Plaintiffs to process and convert Brenmar's interim loan into the SBA 504 loan, and to administer and service the interim loan. Second Am. Compl. ¶¶ 23-24. To prevail on a claim for negligence, the Plaintiffs must plausibly allege that (1) Regions owed a duty or obligation, "recognized by the law," to protect the Plaintiffs from a particular injury or damage; (2) Regions breached that duty; (3) Regions' breach was the legal or proximate cause of injury or damage to the Plaintiffs; and (4) the Plaintiffs suffered damages caused by the breach. *Curd v. Mosaic Fertilizer, LLC*, 39 So. 3d 1216, 1227 (citation omitted). "[I]n order to bring a valid tort claim, a party must . . . demonstrate that all of the required elements for the cause of action are satisfied, including that the tort is independent of any breach of contract claim." *Tiara Condo. Ass'n v. Marsh & McLennan Cos.*, 110 So. 3d 399, 408 (Fla. 2013) (Pariente, J., concurring).

"[T]here is no tort duty to process loans competently." *Silver v. Countrywide Home Loans, Inc.*, 760 F. Supp. 2d 1330, 1339 (S.D. Fla. 2011). In *Silver*, the plaintiff alleged that a bank, Countrywide, induced her into applying for a mortgage with the promise of low interest rates, low monthly payments, and a fixed interest rate, but changed the terms of the mortgage at closing. *Id.* at 1337. She also alleged that Countrywide denied her request to refinance or restructure her loan. *Id.* at 1336. The plaintiff asserted several claims against Countrywide, including a negligence

4

claim, in which she alleged that Countrywide "had the duty to employ competent mortgage servicing and mortgage brokering techniques, including but not limited to protecting [the plaintiff]'s financial interests." *Id.* at 1339. Judge Lenard, who presided over that case, found that the plaintiff "ha[d] not identified any duty, apart from contractual duties, that Countrywide owed her." *Id.* She then stated that no tort duty exists to process loans competently, because the relationship between the plaintiff and Countrywide was contractual; "there is either a breach of that contract or not." *Id.* Without a duty, the plaintiff's claim failed.

While *Silver* is not factually identical to this case, the bases of the negligence claims are sufficiently similar. The *Silver* plaintiff argued that Countrywide had a duty to competently service her mortgage. Here, the Plaintiffs argue that Regions had a duty to process, convert, administer, and service the interim loan. But, as the plaintiff failed to do in *Silver*, the Plaintiffs here have failed to identify any duty that Regions owed them apart from those specifically granted by contract. *See id.*; *see also Tiara Condo. Ass'n*, 110 So. 3d at 408 (Pariente, J., concurring). The Plaintiffs urge this Court to disregard the holding in *Silver* because "there is no Florida case that stands for the proposition that Florida law does not recognize a duty for banks to process loans competently." Pls.' Opp'n at 7. However, the Plaintiffs provide no authority of their own that establishes such a duty **does** exist. *See Anderson v. Branch Banking & Trust Co.*, 119 F. Supp. 3d 1328, 1345 (S.D. Fla. 2015) (citing *Pelfresne v. Village of Williams Bay*, 917 F.2d 1017, 1023 (7th Cir. 1990) (Posner, J.) ("A litigant who fails to press a point by supporting it with pertinent authority, or by showing why it is sound despite a lack of supporting authority or in the face of contrary authority, forfeits the point. [The court] will not do his research for him." (citation and internal quotation marks omitted))). This Court is not in the business of indiscriminately creating Florida law where none exists, based solely on a party's unsupported assertions. *See, e.g.*, *Siegmund v. Xuelian*, No. 12-62539, 2016 WL 1444582 (S.D. Fla. Apr. 11, 2016) (declining to create or recognize an

5

exception to Florida's "continuous ownership" rule in shareholder derivative actions), *reconsideration denied*, 2016 WL 3186004 (S.D. Fla. June 8, 2016).

The other avenues through which the Plaintiffs seek to impose a duty do not persuade. First, the Plaintiffs contend that because Regions "ch[ose] to commence an undertaking," it is "duty bound to complete the task in a non-negligent fashion." Pls.' Opp'n at 5 (citing *Restatement (Second) of Torts* § 342A). But they have provided no justification for their extremely broad view of the law governing tort duties, especially given that their interpretation would obliterate the distinction between tort and contractual duties. *See Lewis v. Guthartz*, 428 So. 2d 222, 224 (Fla. 1982) (holding that there must be a tort "distinguishable from or independent of [the] breach of contract" in order for a party to bring a valid claim in tort based on a breach in a contractual relationship); *Elec. Sec. Sys. Corp. v. S. Bell Tel. & Tel. Co.*, 482 So. 2d 518, 519 (Fla. 3d DCA 1986) ("[A] breach of contract, alone, cannot constitute a cause of action in tort. . . . It is only when the breach of contract is attended by some additional conduct which amounts to an independent tort that such breach can constitute negligence." (citations omitted)), cited in *Tiara Condo. Ass'n*, 110 So. 3d at 408-09 (Pariente, J., concurring). Second, the Plaintiffs cite several cases "where banks have been held liable for negligence" as support for their argument that a duty exists. Pls.' Opp'n at 5 (citing *Fed. Ins. Co. v. MCNB Nat'l Bank*, 958 F.2d 1544 (11th Cir. 1992); *Fintak v. Wachovia Bank, N.A.*, No. 08-2558, 2009 WL 413599 (M.D. Fla. Feb. 18, 2009); *Espirito Santo Bank v. Agronomics Fin. Corp.*, 591 So. 2d 1078 (Fla. 3d DCA 1991)). But the mere fact that banks have been found negligent under circumstances unrelated to those present here is not a sufficient basis for this Court to impose a tort duty on a bank where one has heretofore been unrecognized. And third, the Plaintiffs argue that the SBA 504 Program is regulated by 13 C.F.R. § 120, but as Regions correctly points out, nowhere in the statutory or regulatory scheme did Congress authorize a private cause of action for negligence like the Plaintiffs assert here.

6

The Court finds that the Plaintiff has failed to demonstrate the existence of a duty to process, convert, administer, or service the Plaintiffs' interim loan, or of any other tort duty owed by Regions to the Plaintiffs. Accordingly, Regions' motion to dismiss the negligence claim is granted.

### B.   *Breach of Fiduciary Duty*

In their breach of fiduciary duty claim, the Plaintiffs allege that Regions owed them a fiduciary duty to, *inter alia*, act in good faith and in the Plaintiffs' best interests under the SBA 504 Program, which Regions failed, refused, or neglected to carry out. Second Am. Compl. ¶¶ 25-28. To state a claim for breach of fiduciary duty, a plaintiff must plausibly allege "(1) the existence of a fiduciary duty, (2) a breach of that duty, and (3) damages proximately caused by the breach." *Silver*, 760 F. Supp. 2d at 1338 (citing *Gracey v. Eaker*, 837 So. 2d 348 (Fla. 2002)). "Under Florida law, a fiduciary relationship exists where confidence is reposed by one party and a trust accepted by the other." *Id.* (citing *Doe v. Evans*, 814 So. 2d 370, 374 (Fla. 2002)). "[T]here is no presumed fiduciary relationship between a lender and a borrower." *McCulloch v. PNC Bank Inc.*, 298 F.3d 1217, 1226 n.13 (11th Cir. 2002).

A fiduciary relationship is formed either "through the terms of an express agreement" or implied by law. *Taylor Woodrow Homes Fla., Inc. v. 4/46-A Corp.*, 850 So. 2d 536, 540 (Fla. 5th DCA 2003). The Plaintiffs have not alleged the existence of any express agreement through which Regions agreed to a fiduciary relationship with the Plaintiffs. So, to establish an implied relationship, the Plaintiffs "must allege some degree of dependency on one side and some degree of undertaking on the other side to advise, counsel, and protect the weaker party." *Watkins v. NCNB Nat'l Bank of Fla., N.A.*, 622 So. 2d 1063, 1065 (Fla. 3d DCA 1993). That said, "[w]hen the parties are dealing at arm's length, a fiduciary relationship does not exist because there is no duty imposed on either party to protect or benefit the other." *Taylor Woodrow Homes*, 850 So. 2d at 541.

The transaction between the Plaintiffs and Regions was an arm's length, commercial trans-

7

action. The fact that Regions was participating as a lender in the SBA 504 Program, which the Plaintiffs contend was "created to assist small businesses," Pls.' Opp'n at 9, does not elevate the relationship between a lender and borrower to that of a fiduciary and a beneficiary. Moreover, the Plaintiffs have not alleged that they placed their trust and confidence in Regions; even had they done so, that allegation alone would be insufficient to establish that a fiduciary relationship exists sufficient to withstand a motion to dismiss. "[O]ne may not unilaterally impose a fiduciary responsibility on another simply by reposing trust; absent some conscious acceptance of such duties, no fiduciary relationship is created." *Silver*, 760 F. Supp. 2d at 1339; *see also Taylor Woodrow Homes*, 850 So. 2d at 541 ("[I]n the creditor-debtor relationship, a fiduciary duty does not arise and allegations of superior knowledge of a party's financial condition are generally insufficient to transform the creditor-debtor relationship into a fiduciary relationship.").

Several "[s]pecial circumstances may also give rise to a fiduciary duty," depending on the facts of a particular case, "including where the lender (1) takes on extra services for a customer, (2) receives any greater economic benefit than from a typical transaction, or (3) exercises extensive control." *Wilson v. EverBank, N.A.*, 77 F. Supp. 3d 1202, 1223 (S.D. Fla. 2015) (citations and internal punctuation marks omitted). The Plaintiffs, relying on *Capital Bank v. MVB, Inc.*, 644 So. 2d 515 (Fla. 3d DCA 1994), argue that such circumstances exist here. In *Capital Bank*, a bank initially provided a customer a loan and line of credit. Then, one of the bank's loan officers pressured the customer to enter into a series of transactions. The loan officer "urged [the customer] to trust him and promised that [the customer would benefit]." *Id.* at 519. The loan officer urged the customer to enter into another transaction; when the customer protested, the loan officer said, "Do it for us . . . You are part of [the] Capital Bank family. You help the bank, we are going to help you." *Id.* When pressing the customer to enter into a third transaction, the loan officer assured the customer, "If you help us with this one, we will continue on. We are in business together." *Id.*

8

Florida's Third District Court of Appeal found that a fiduciary relationship existed between the bank and the customer because the loan officer "invited the [customer]'s reliance by urging [the customer] to trust him and by reassuring [the customer] that he was part of the Capital Bank family." *Id.* at 520. Further, the loan officer "fostered [the customer]'s perception that the bank was his financial advisor, by repeating that the bank's plans would benefit his business." *Id.* Finally, the bank "clearly knew of" the customer's reliance. *Id.*

The Plaintiffs argue that *Capital Bank* compels the conclusion that a fiduciary relationship exists because Regions advised the Riggins to form a limited liability company to act as the borrower of the SBA 504 loan. This argument is unpersuasive. The loan officer's advice and actions in *Capital Bank* were far more pervasive—and far more ***persuasive*** on the customer there—than the advice by Regions here that the Riggins form an LLC. While the *Capital Bank* court recognized a fiduciary relationship between the bank and the customer because the bank "kn[ew] or ha[d] reason to know of the customer's trust and confidence ***under circumstances exceeding an ordinary commercial transaction***," *id.* at 521 (emphasis added), no such extraordinary circumstances are alleged here.

It seems that, under the Plaintiffs' view of *Capital Bank*, any action by Regions separate from bare facilitation of the loan program should amount to circumstances that exceed an ordinary commercial transaction, thereby creating a fiduciary relationship. That is a bridge too far. Not only do Regions' actions not even closely approximate the loan officer's action in *Capital Bank*, but the Plaintiffs have also failed to allege that Regions knew or had reason to know of the Plaintiffs' trust and confidence under circumstances that sufficiently exceed the ordinary commercial transaction between them.

Because the transaction between the Plaintiffs and Regions was nothing more than an arm's length, commercial transaction, and because no other circumstances that could potentially give rise

9

to a fiduciary relationship are present in this case, the Plaintiffs' breach of fiduciary claim fails. Accordingly, Regions' motion to dismiss this claim is granted.[1]

\* \* \*

The Plaintiffs have already amended their complaint twice in response to the pleading deficiencies highlighted by Regions in their two previous motions to dismiss [ECF Nos. 6 & 32]. Despite these two amendments, many of the deficiencies addressed by the Court today exist in both previous versions of the Complaint. *See* [ECF Nos. 1 & 31]. The Plaintiffs have not requested further leave to amend. Upon consideration, the Court finds that the Plaintiffs' "perfunctory attempts at amendment do not warrant granting an additional 'bite at the apple.'" *Yahav Enters. LLC v. Beach Resorts Suites, LLC*, No. 15-22227, 2016 WL 111361, at \*4 (S.D. Fla. Jan. 11, 2016) (citing *Tropic Ocean Airways, Inc. v. Floyd*, 598 F. App'x 608, 612 (11th Cir. 2014) (per curiam) (finding that when a plaintiff "never requested leave to amend and had already amended its complaint once . . . the district court did not err when it dismissed [the plaintiff's] claims with prejudice"). The Second Amended Complaint, therefore, warrants dismissal with prejudice.

## IV. CONCLUSION

Based on the foregoing, it is **ORDERED AND ADJUDGED** that the Defendant's Motion to Dismiss [ECF No. 45] is **GRANTED**. The Plaintiffs' Second Amended Complaint [ECF No. 44] is **DISMISSED WITH PREJUDICE**.

This action is **CLOSED** and all pending motions are **DENIED AS MOOT**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 15th day of August, 2016.

DARRIN P. GAYLES
UNITED STATES DISTRICT JUDGE

---

[1] Because the Court has determined that both claims in the Second Amended Complaint should be dismissed, it need not address Regions' argument regarding waiver.